NIN, PLAINTIFF AND APPELLEE, *v.* RUCALLEDA ET AL.,
DEFENDANTS AND APPELLANTS.

APPEAL from the District Court of Mayagüez in an Action
for Right of Way and Injunction.

No. 2091.—Decided June 1, 1920.

RIGHT OF WAY—PROPERTY ISOLATED FROM PUBLIC HIGHWAY—OUTLET TO PUBLIC
HIGHWAY.—It should be considered that a property has no outlet to a pub-
lic highway not only when such is absolutely the case, but also when the out-
let is not sufficiently secure and feasible. It may be said that a servitude
of right of way must follow a straight line—the shortest distance—between
the public highway and the dominant tenement, modifying and adapting the
same so as to cause the least possible damage and taking into account that
the owner of the dominant tenement has a right to ask or demand it in
keeping with the requirements and conveniences of his tenement. Therefore,
the owner of a property situated between a municipal road and an insular
highway has a right to demand direct access to the latter if that is the nat-
ural and most convenient outlet.

ID.—DAMAGES.—It having been assigned that the district court erred in fixing
$20 per annum as the amount that the plaintiff should pay to the defend-
ants as damages for the servitude of right of way imposed upon the servient
tenement, *Held:* That although the manner in which the damages were as-

sessed was rather unique, as no prejudice was shown and no effort was made to have the lower court modify its judgment after hearing further evidence, the matter is not of sufficient importance to justify a remand of the case.

The facts are stated in the opinion.

*Mr. J. Sabater* for the appellants.

*Messrs. Benet & Souffront* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

The plaintiff, as the owner of a coffee plantation called San Carlos, brought suit against the defendants as the owners of an adjoining plantation named Paz and obtained judgment establishing over the property of the defendants a servitude consisting in the unlimited use of a road, already existing and traversing the said property, leading to the *carretera* that connects the city of Mayagüez with Maricao and Las Marías. The judgment also made permanent a preliminary injunction already decreed and provided that the defendants and future owners of the servient tenement should have and recover from the plaintiff and from the future owners of San Carlos the sum of $20 annually, payable in advance, as an indemnity for the use and right of way so established.

The plaintiff alleged, among other things, that the property of the plaintiff was surrounded by others, including that of the defendants, and was isolated from all public roads; that from time immemorial San Carlos had used as an outlet for its crops and produce, and as a means of egress to the *carretera* above mentioned, a road which, traversing the *hacienda* Paz, connected with the *carretera* at kilometer 12½, and that without such right of way or some other road through the property of the defendants, the plaintiff would lose a large part of his crops and his property would be greatly depreciated in value.

The defendants denied the isolation of the property San Carlos and alleged that the same had four other roads over which the crops thereof could be transported.

The court below not only concluded in general terms that the plaintiff had established the allegations of the complaint, but also found more specifically as follows:

"The evidence adduced, including that resulting from an ocular inspection, plainly demonstrated to the court that the plaintiff's San Carlos property has no access to any public road, since the defendants have prohibited the use of the only road used by the plaintiff for upward of twenty years, which, starting from the site of the San Carlos buildings, traverses the La Paz property of the defendants.

"This road is unquestionably the shortest, most practicable and serviceable route that the San Carlos property can use, and which it has heretofore used, for conveying its crops and products to the highway. There is another road which, leading from the site of the San Carlos buildings and crossing the said property and another known as Triunfo belonging to the Martínez Succession, continues thus in a westerly direction until, after traversing lands belonging to the Surra Succession for half a kilometer, it connects in the property of Carlos Sabater with the vicinal or country road known as Río Cañas."

After an ocular inspection of this road the court made the following findings:

"1. That the plaintiff is not entitled to the use of the said road as far as the vicinal road of Río Cañas, since the same crosses lands which do not form part of the San Carlos property and which do not belong to the plaintiff, there being no easement in favor of the San Carlos property or of the plaintiff for the use of such road.

"2. That said road is not sufficiently serviceable or feasible for the profitable conveyance thereover by the plaintiff of all the crops of the San Carlos property, including the minor products.

"3. That the vicinal road of Río Cañas up to its junction with the highway at kilometer 8½ is inadequate for the requirements of traffic and the conveyance of agricultural products, since it is capable of use only by pack animals, and to judge from its condition after three or four months of drought, it is a foregone conclusion that in the rainy season it would be extremely difficult to haul farm products thereover, since, far from being a properly laid road, it is full of large ditches and holes.

"4. That a pack animal would require at least two hours to cover

the distance from the site of the plaintiff's San Carlos buildings to the highway, which, in view of the high cost of this kind of transportation of minor products in the country places of Porto Rico, would necessarily prove a source of great loss to the plaintiff in the transportation of all his crops and more particularly of such agricultural products as bananas, oranges, etc., which unquestionably would be unable to stand the transportation expense and would therefore result in nearly a total loss.

"5. That during the rainy season the Cañas river naturally and frequently interrupts the traffic along said road for many hours, since at the period or time the court made its ocular inspection the said river was approximately one yard in depth at the crossing point on said road.

"The court having inspected the road which starts from the site of the buildings in the plaintiff's San Carlos property and traverses the defendants property known as Paz, reached the following conclusions on the basis of the evidence introduced in the present case:

"First. That this road is the shortest means of access and really the only useful, feasible and serviceable egress from the San Carlos property to the said highway, being a fairly good road with very few slopes and available for all the uses made of vicinal roads in the highway zones, a pack animal being capable of making the journey from the San Carlos buildings to the highway in about thirty minutes.

"Second. That for upward of twenty years the plaintiff availed himself of this road for the purpose of conveying his crops from the San Carlos property and the defendant has been unable to show that at any time the Paz property suffered any damage as a consequence of such use by the plaintiff, or to demonstrate in any way that the continued use of the said road by the plaintiff for the purpose of removing the crops of the San Carlos property would hereafter cause him any damage whatever.

"Third. That, on the other hand, a refusal to allow the plaintiff to use this road for the removal of the San Carlos crops, thus denying the easement prayed for, would necessarily cause him such grave injury as would result in the loss of a large part or nearly the whole of his minor products, thus depriving the public of this efficient source of supply and greatly depreciating the value of the San Carlos property.

"Fourth. That if the plaintiff were denied the use of this road the San Carlos property would be isolated from all public thoroughfares."

Appellants assign as error:

"1. The court erred in granting a right of way of necessity on the ground that the plaintiff's San Carlos property is separated from all public roads.

"2. The lower court erred in considering the vicinal road of Río Cañas as though its condition could have any legal weight in granting or denying the easement.

"3. The lower court erred in construing section 571 of the Civil Code.

"4. The lower court erred in not finding that the shortest route for the removal by the plaintiff of his farm produce is that leading to the public road of Río Cañas.

"5. The lower court erred in rendering judgment granting an easement of unlimited right of way over the Paz property and fixing as compensation the value of the annual repairs necessary thereto."

The appellants concede that the first assignment raises the vital question. Yet the argument thereunder entirely overlooks the finding that the plaintiff has no right of way over the lands lying between San Carlos and the Río Cañas road and tacitly assumes that the existence of such intervening properties has no bearing on the question of isolation. No authority is cited to show, nor is it insisted in so many words, that the owner of an isolated property may not demand an outlet through the lands of any of his neighbors other than the one whose property gives access to the nearest public road, regardless of all considerations of comparative convenience, value and desirability of such outlet, viewed in the light of the needs of the isolated property as determined by its location with reference to market and other possible means of communication therewith. Such, however, would be the practical result of the appellants' theory should it prevail in the instant case.

The argument under the second, third and fourth assignments is largely a variation and to some extent an elaboration of that under the first. Perhaps the court included, if not in its finding at least in a separate statement of the.

facts disclosed by its view of the two roads in question and the lands traversed by them, more than was necessary to sustain the judgment. The same may be true of various considerations mentioned, arguendo, in support of the conclusion reached on the merits. Such error, if any, was harmless and most of the argument is addressed to details of this sort. Sections 571 and 572 of the Civil Code, identical with articles 564 and 565 of the Spanish Code, read as follows:

"Section 571.—The owner of a tenement or property surrounded by others belonging to several owners and having no exit to the public highways, has the right to demand the right of way through the neighboring tenements on paying the proper indemnity.

"If this servitude be established in such a manner that its use may be continuous for all the requirements of the dominant tenement establishing a permanent passage, the indemnity shall include the value of the land occupied and the amount of damage caused to the servient tenement.

"When it is limited to the passage required for the cultivation of the tenement surrounded by others, and for the transportation of its crops through the servient tenement without a permanent passage, the indemnity shall consist in the payment of the damage caused by the said incumbrance.

"Section 572.—The servitude of the right of way shall be at the point least prejudicial to the servient tenement, and, in so far as is consistent with this rule, where the distance from the dominant tenement to the public road may be the shortest."

Speaking of such servitude, Manresa, volume 4, page 704, says:

"The general logical ground for this lies in the necessity for making the same conform to the objects of public economy. A property cut off from all communication with a public road would be an absolutely negative factor in the proper consummation of its uses and benefits."

And on page 706 of the same volume:

"The isolation in its relation to the object of the servitude, should not be construed strictly, but in connection with the need it is sought

to satisfy and which cannot be satisfied for lack of a convenient outlet, in view of the necessity for access to the public road.''

Again, same page and volume:

''When shall it be deemed that a tenement has no outlet to a public road? In point of fact it should be so deemed not only when there is absolutely no access whatever but also when the outlet is not sufficiently secure and feasible. A tenement which abuts on a public road by an impassable slope or declivity is virtually isolated for the purposes of the easement solicited by its owner. Again, should a tenement, which for any reason is necessarily deprived of its means of access to the public road at a certain period of the year, be deemed to have a proper outlet to such public road? In this we concur with the authors that the owner of a property under such conditions can demand a right of way during the entire year, since such intermittent form of use is repugnant to the idea of servitude in its proper signification.''

Similarly, at page 716 of the same volume we find the following:

''Whether a river running between a property and the public road ought to be regarded as producing the isolation of such property, has been questioned. The point has been discussed by Laurent and has come up for discussion in foreign courts of justice,—Holland, France, etc. The question really can not be decided offhand. If the river can be easily and safely forded at all times it may not prove such an obstacle as would justify the imposition of a servitude * * * .''

It is true, as pointed out by the appellants, that the property of the plaintiff does not adjoin the Río Cañas road at a point where access thereto is impossible, nor is it even adjacent thereto; nor is it separated therefrom by any stream unfordable at times or other intermittent barrier. But it is equally and obviously true that these are mere illustrations of an infinite variety of circumstances that might and should control in a particular case.

It is also true, as likewise suggested by the appellants, that Manresa, at page 718, same volume, intimates that as

between various possible outlets through lands owned by different adjoining owners the court should be guided by the same general rule that governs in the choice of routes over the land of a single owner, to wit, the shorter in distance or that which will cause the least damage. But here also there is small comfort for the appellants in the commentary as a whole:

"Hence, in fixing this servitude the main principle to be observed is the selection of the shortest route and that which will cause the least damage. The difficulty, however, lies in the fact that these two conditions are not always found together; the shortest route may cause the greatest damage. In this event the code provides the solution; the shortest route must yield to the route that causes the least damage. The servitude of right of way must follow a straight line— the shortest distance—between the public road and the dominant tenement, modifying and adapting the same so as to cause the least possible damage. Naturally, it is incumbent upon the owner of the servient tenement to resist either the imposition of the servitude on his tenement if he can show that it would cause less damage on another, or, in case of equality of damage in either instance, the granting of the right of way as asked by the owner of the dominant tenement, in order to conform to the provisions for the fixing of servitudes as set out in section 565.

"Although, as we have stated, it would seem that according to the provisions of section 565 these conditions have been imposed in the interest of the servient tenement, since it is sought to harmonize the shortest route—for the benefit of the servient tenement in connection with the minimum quantity of land occupied—with the least damage thereto, the shortest of two routes or the route which causes the least damage should be chosen; nevertheless, the same should not be too strictly construed in this regard. At any rate the servitude imposed under the least-damage theory indirectly benefits the owner of the dominant tenement, since the lesser the damage the lesser should the amount of the indemnity be. Besides, it must not be forgotten that the owner of the dominant tenement has a right to ask or demand that the servitude of right of way, when made to conform to such conditions, shall be in keeping with the requirements and conveniences of his tenement."

The defendants herein, did not seek to make other land-owners parties to the suit, nor does it appear, nor was it even alleged, that an outlet over the lands of such owners would cause them less damage than the servitude decreed by the court below will cause the defendants. On the contrary, all the evidence, as well as the findings of the court, point to the contrary conclusion, and, as indicated by Manresa in the text last above quoted, not only must the question of the shortest route be subordinated to that of the resulting damage, but the best interest of the dominant tenement should never be put out of view. Nor do we find here or elsewhere any authority for the proposition that the owner of a property lying between a neighborhood or municipal road and an insular highway has no right to demand direct access to the main thoroughfare, that being the natural and most convenient outlet, merely because the inferior road might be reached by a somewhat shorter route and if successfully negotiated would enable the weary traveler eventually to arrive at his destination.

That no hard and fast rule has been or can be laid down for the absolute control of every conceivable case; that the decision in each instance must depend in a measure on the peculiar circumstances involved, and that the trial judge in all cases, after weighing the facts in the light of the general principles underlying the code provisions, should render such judgment as common sense and the interests of substantial justice may dictate, is about as definite a conclusion as can be drawn from the commentaries as a whole. And, in substance, this seems to be what the court below has done.

In explanation of the rather unique method of assessing damages the trial judge says:

"As to the indemnity to be paid by the plaintiff in compensation of the right of way prayed for, the only evidence available to the court for determining the amount thereof is the testimony of the

plaintiff himself to the effect that the repairs to the said road called for an annual expenditure of $20, and since the defendants have introduced no evidence upon which to base an estimate of the amount they should receive and have not shown that the easement in favor of the San Carlos property would be detrimental to the Paz property, and since it is not a question of laying a new road, but merely of using one already in existence and in use for upward of twenty years without entailing any damage to the defendants' property, the court holds that the plaintiff shall pay to the defendants the sum of twenty dollars yearly to meet the expenses for the repair of said road as an indemnity for the easement in favor of the San Carlos property as the dominant tenement over the Paz property or servient tenement belonging to the defendants.''

The appellants complain that the allowance in question is a departure from the rule prescribed in the second paragraph of section 571, *supra,* but no prejudice is shown and no effort was made to have the court below modify its judgment in this regard, which it might have done, reopening the case if necessary for further testimony on this point. In the absence of any evidence as to the value of the land or the amount of damage, the defendants were entitled to no more than nominal damages, and while the method of measurement is somewhat unusual, we are inclined to agree with the appellee that the trial judge was quite liberal in fixing the amount. In any event, the record furnished no basis for a modification of the judgment by this court in the defendants' favor and the matter is not of sufficient importance to justify us in remanding the cause. *De minimis non curat lex.*

The judgment appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices Wolf, del Toro and Aldrey concurred.